RAWLS, Acting Chief Judge.
Appellee-plaintiff Jackson sued the Railroad seeking damages under the Federal Employers’ Liability Act.[1] Count I of Jackson’s amended complaint alleged that the Railroad had been negligent in several enumerated particulars. Count II claimed a violation of the Boiler Inspection Act[2] which imposes absolute liability upon a railroad to an injured employee when it fails to keep “. . . . any locomotive and all parts and appurtenances thereof ... in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb . . .” Trial was had and an adverse final judgment to the Railroad was entered, pursuant to a jury verdict, in the sum of $325,000.00. Hence, this appeal.
The crux of the Railroad’s primary point on appeal is whether a radio installed in a locomotive by the Railroad for the purpose of providing two-way communication between the engine and yard employees is an appurtenance within the meaning of the Boiler Inspection Act.
On the occasion of this tragic accident, plaintiff Jackson was working as a switch-man in the Baldwin yards of defendant Railroad. His employment encompassed *569 the throwing of switches in channeling railroad cars to a specific sidetrack. In order to direct the engineer and others in the work crew, Jackson gave signals either by hand, lantern or radio. At about 8:00 p. m. on the night of the accident the switching crew composed of Jackson, the conductor, field switchman and the engineer was moving a cut of cars in the Baldwin yard from the main lead track onto the No. 19 track. To accomplish the move it was necessary for Jackson to throw the No. 3 switch and then throw the No. 19 switch. Signals given to effectuate the movement were transmitted by Jackson’s portable radio. Jackson erroneously threw a switch which put the cut of cars on the wrong track. After erroneously throwing the switch, Jackson called to the engineer on his radio advising him to move the train by saying, “Come ahead.” The field switchman testified that he heard Jackson’s transmission on his portable radio and he was fearful that the engineer did not receive Jackson’s signal. For this reason he relayed the signal to the engineer on his radio. The movement was initiated and Jackson was struck by the cut of cars severing both his legs.
Evidence adduced most favorable to Jackson’s position is as follows: Engine radios have been standard railroad equipment for a number of years and have been used by the defendant Railroad since 1955; Jackson’s transmission to the engineer to “Come ahead” was not received by the engineer on the engine radio receiver; the engineer violated safety rules in moving the train without being in constant communication on the radio or without a signal from Jackson; Jackson’s transmission was not heard by the engineer because of some defect in the sensitivity of the receiver installed on the engine; the Railroad took no steps to increase the sensitivity of the receiver in accordance with the manufacturer’s recommendations; and had the engineer received Jackson’s transmission, Jackson would not have been injured because the sole reason for leaving his place of safety was to walk across the tracks to give a lantern signal which would be visible to the engineer to start the movement.
The Railroad contends that at the conclusion of plaintiff’s case its motion for directed verdict should have been granted because: (1) an engine radio is not an appurtenance under the Boiler Inspection Act; (2) plaintiff failed to establish any evidence of a defective condition in the engine radio; and (3) assuming the failure of the engine radio, it was not the proximate cause of the plaintiff’s injuries.
The Boiler Inspection Act[3] provides in part: “It shall be unlawful for any carrier to use or permit to be Used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate . . .” (Emphasis supplied.)
Although the Railroad concedes that a radio was installed on the locomotive, it strenuously argues same is not an appurtenance within the meaning of the Boiler Inspection Act. The Railroad cites Southern Railway Co. v. Lunsford[4] as the leading case on this point. There, the Supreme Court was confronted with an experimental device called “Wright’s Little Watchman”, and in holding same was not an appurtenance stated:
“With reason, it cannot be said that Congress intended that every gadget placed upon a locomotive by a carrier, for experimental purposes, should become part thereof within the rule of absolute liability. So to hold would hinder commendable efforts to better conditions and tend to defeat the evident purpose —avoidance of unnecessary peril to life or limb. Whatever in fact is an integral or essential part of a completed locomo *570 tive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not.”
The Railroad then reasons that the engine radio was not essential to the operation of a yard locomotive since movement of railroad cars had been conducted earlier on the evening of the accident by means of hand signals. Further, since there was no evidence that the Interstate Commerce Commission had promulgated any rules governing the use of a radio on a locomotive, the Boiler Inspection Act does not apply to this device.
In the case of Southern Railway Company v. Bryan[5] the Fifth Circuit Court of Appeals in construing the Boiler Inspection Act stated:
“ . . . All of the federal safety laws in Chapter 1, Title 45, U.S.C., are in pari materia and must be liberally construed in connection with the federal remedy provided in Chapter 2 of such title to carry out their remedial and humanitarian purposes.”
And in Fritts v. Toledo Terminal R. Co.[6] the federal Supreme Court held that the seat upon which the engineer sat while operating a locomotive was a “part and appurtenance” of the engine, the defective condition of which would impose absolute responsibility upon the railroad.
This record reveals that such radios have been utilized by the railroad industry for a number of years to facilitate the movement of cars in switching and yard operations. We hold that the engine radio here considered was clearly a “part and appurtenance” as within the meaning of the Boiler Inspection Act.
We next consider appellant’s assertion that the plaintiff failed to establish any evidence of a defective condition in the engine radio. Competent testimony was adduced and presented to the jury by plaintiff as to the defective condition of the engine radio. The trial judge was correct in denying the Railroad’s motion for a directed verdict and properly submitted the conflicting evidence to the jury. As to the Railroad’s contention that the failure of the radio was not the proximate cause of Jackson’s injury, we observe that the evidence is undisputed that had Jackson’s transmission been received by the engineer, Jackson would not have left his place of safety.[7]
Being of the opinion that the Boiler Inspection Act is applicable, it is unnecessary to consider the point asserted by the Railroad going to Count I of plaintiff’s complaint under the Federal Employers’ Liability Act.
The judgment appealed is affirmed.
JOHNSON, J., and McLANE, RALPH M., Associate Judge, concur.

. FELA, 45 U.S.C.A. § 51 et seq.

. Boiler Inspection Act, 45 U.S.C.A. § 22.

. Boiler Inspection Act, 45 U.S.C.A. § 23.

. Southern Railway Co. v. Lunsford, 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740 (1936).

. Southern Railway Company v. Bryan, 375 F.2d 155 (5 Cir.1967).

. Fritts v. Toledo Terminal R. Co., 293 F.2d 361 (6 Cir. 1961).

. See Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208, 210 (1949), stating:
“Liability of a railroad under the Safety Appliance Act for injuries inflicted as a result of the Act’s violation follows from the unlawful use of prohibited defective equipment ‘not from the position the employee may be in, or the work which he may be doing at the moment when he is injured.’ ”