**BURLINGTON NORTHERN RAILROAD COMPANY and Montana Rail Link, Plaintiffs,**

v.

**STATE OF MONTANA; and the Montana Department of Public Regulation, Public Service Commission, Defendants.**

No. CV 91–38–H–CCL.

United States District Court,
D. Montana,
Helena Division.

Oct. 16, 1992.

Robert A. Cannon, Richard A. Knudsen, Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., Kurt W. Kroschel, Kroschel & Associates, Billings, Mont., Leo Berry, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Mont., Edward Murphy, Datsopoulos, MacDonald & Lind, Missoula, Mont., for plaintiffs.

Attorney General Marc Racicot, Ivan C. Evilsizer, Denise Peterson, Helena, Mont., Lawrence M. Mann, Alper & Mann, Washington, D.C., Mike Halligan, Missoula, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Plaintiff Burlington Northern Railroad Company and Plaintiff–Intervenor Montana Rail Link request the court to declare Section 69–14–116, Montana Code Annotated, as amended by Chapter 487, Session Laws of Montana 1991 (House Bill 271), and the rules and regulations implementing that legislation adopted by the Montana Public Service Commission unconstitutional, void and unenforceable; and to restrain Defendants and all persons acting in con-cert with them from attempting to enforce such legislation and regulations.

## FACTS

Plaintiff Burlington Northern Railroad Company is a Delaware corporation having its principal place of business in Fort Worth, Texas, and is engaged in the business of interstate transportation of goods by railroad, including operation of freight trains into and within the State of Montana.

Defendants State of Montana and the Montana Public Service Commission have enacted and are authorized to enforce the laws, rules, and regulations which are the subject matter of this action.

House Bill 271 (a bill for an act entitled "An act allowing the Public service commission to require a rear-end telemetry system on certain railroad trains; providing an exemption for a caboose equipped train; and amending § 69–14–116, MCA") was adopted by the Legislature of the State of Montana and was subsequently signed into law by the Governor, to become effective on October 1, 1991. The Montana Public Service Commission then adopted rules and regulations for the implementation of the provisions of House Bill 271.

House Bill 271 and its implementing rules and regulations require, inter alia, that all freight trains operated within "mountain grade" territory be equipped with a two-way telemetry system or an occupied caboose.

## PROCEDURAL BACKGROUND

Plaintiff Burlington Northern ("BN") filed this action in this court on September 17, 1991. Later the same day, the Montana Public Service Commission ("MPSC") filed similar action in the District Court of the First Judicial District of the State of Montana naming BN, Union Pacific Railroad Company, Montana Rail Link, and the Railway Labor Executive's Association as Defendants. On September 20, 1991, those Defendants filed a notice of removal of that civil action to this court. That action was given the federal docket number CV 91–39–H–CCL.

On September 24, 1991, MPSC filed a motion to dismiss Burlington Northern's complaint on grounds of abstention.

On September 26, 1991, MPSC filed its motion to remand the removed action. In making its motion, MPSC acknowledged that both actions involved identical legal and factual issues. However, though the substantive issues raised in both actions are identical, the procedural issues stemming from the cases are different. Because the parties had difficulty distinguishing between the two cases in their pleadings, the court felt it necessary to stay the proceedings in the removed action to eliminate redundant filings and prevent needless confusion.

At the same time that Plaintiff Burlington Northern filed its complaint in this action, it also filed a motion for temporary restraining order and for preliminary injunction. The matter was heard on September 24, 1991, at which time Plaintiff Montana Rail Link's motion to intervene was granted. On September 30, 1991, the court issued its opinion and order granting Burlington Northern's motion for temporary restraining order and setting down a hearing on the motion for preliminary injunction on October 4, 1991.

On October 3, 1991, the court granted Defendants' motion to continue the hearing on the motion for preliminary injunction and rescheduled the hearing for October 24, 1991, and, upon agreement of the parties, further ordered that the restraining order remain in effect until the matter could be heard.

On October 10, 1991, Plaintiff Burlington Northern moved for summary judgment asserting that the Montana two-way telemetry statute was preempted by federal law.

On October 17, 1991, Plaintiff Burlington Northern filed its amended complaint.

On October 18, 1991, Defendants again moved for a continuance of the hearing on the motion for preliminary injunction. The court reset the hearing for December 5, 1991, and, upon agreement of the parties, further ordered that the restraining order remain in effect until the date of the hearing.

On November 8, 1991, the Railway Labor Executive's Association motion to intervene was granted and it was joined as a Defendant.

Throughout this time, briefing continued on Defendants' motion to dismiss and Plaintiff's motion for summary judgment. On December 5, 1991, the parties agreed and stipulated that the court should decide the motion to dismiss presented by MPSC and the motion for summary judgment submitted by BN before any further action was taken. They also stipulated that the restraining order should remain in effect until the court ruled on those motions.

Further briefing continued along with the submission of affidavits by both parties until early 1992, when the parties filed a stipulation for submission of Defendants' motion to dismiss and Plaintiff's motion for summary judgment upon the briefing filed and without oral argument.

## DISCUSSION

### Section 69–14–116, Mont.Code Ann.

Plaintiffs assert that Section 69–14–116, Mont.Code Ann., as amended, is unconstitutional. The statute states in pertinent part:

69–14–116. General protection of health and safety on railroads—rear-end telemetry systems—exemption for a caboose-equipped train.

(1) . . .

(2)(a) Except as provided in subsection (4), the commission shall require a railroad operating trains in Montana to install a rear-end train telemetry system on all trains operating within mountain grade territory as geographically defined and designated by mile posts in the railroads official timetable and operating rules on file with the commission.

(b) As used in this section, "telemetry system" means a radio transmitter and receiver system with one device placed on the last car of a train and a second device placed in the cab of the controlling locomotive. . . .

(c) A train operating in the area defined under this subsection (2) may not

depart a crew change point or its local point of origin unless the train is equipped with the telemetry system required under the rules pursuant to this section.

(d) Telemetry systems installed on a train in conformity with rules made under this section must be equipped so that an emergency application of brakes of the train can be initiated by activation of the device placed on the last car at the rear of the train.

(3) ...

(4) The commission may not require the installation and use of a telemetry system as described in this section on a train equipped with a caboose that:

(a) meets with the requirements of Montana law;

(b) is placed as the last car of the train; and

(c) is occupied by a member of the train crew.

There is currently pending before the Federal Railroad Administration a proceeding filed by the Montana Public Service Commission for consideration of similar requirements nationwide. However, that proceeding has no bearing on this case.

*Defendants' Motion to Dismiss*

Both this action and the action initially filed in state court by MPSC request a declaratory ruling on the constitutionality of Section 69–14–116, Mont.Code Ann., as amended. Defendants move to dismiss this action on abstention grounds asserting that the court should abstain from interfering in state judicial proceedings.

Defendants argue that the type of abstention enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is applicable in this case. The notions of comity and federalism which underlie abstention were described in the *Younger* case as "a proper respect for state functions, a recognition of the fact that the entire country is made of a Union of separate state governments, and a continuance of a belief that the National Government will fare best if States and their institutions are left free to perform their separate functions in their separate ways,"

*Id.* 401 U.S. at 44, 91 S.Ct. at 750. Abstention, however, is a narrow exception to the duty of a federal court to adjudicate a controversy before it and is justified only in exceptional circumstances. *See County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

■ Defendants cite to *CSXT, Inc. v. Pitz*, 883 F.2d 468 (6th Cir.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990), which adopted the principles of *Younger* abstention in holding that abstention is proper when a court can answer these three questions affirmatively: (1) whether the relevant state proceedings are "an ongoing state judicial proceeding"; (2) whether the proceedings "implicate important state interests"; and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *CSXT*, 883 F.2d at 474, citing *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

■ Obviously, the first prong of the *Younger* test as set forth in *CSXT* raises the decisive questions in Defendants' motion to dismiss on grounds of abstention. Because the action filed by MPSC in state court was removed to this court, there is no ongoing state judicial proceeding. Therefore, the remand issue is necessarily intertwined with the abstention issue. However, an evaluation of Defendants' arguments on remand emphasizes one procedural circumstance which the court deems ultimately decisive on this matter. That crucial procedural fact is that at the time Burlington Northern filed its complaint with this court, there was no ongoing state judicial proceeding. A remand by this court of MPSC's state court action would not alter that fact. Therefore, though obviously critical to Defendants' motion to dismiss, a remand of MPSC's state court action is not dispositive. Even if the court were to remand, it would still have to decide if abstention is appropriate under circumstances where a state court action is not filed until

after the filing of an identical federal action. The court concludes that abstention is inappropriate here. To hold otherwise could defeat federal jurisdiction of constitutional construction of state statutes whenever the state filed a similar state action. See *People of the State of Illinois v. General Electric Co.*, 683 F.2d 206 (7th Cir. 1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

It is clear that the court's abstention in this matter would further no policy of comity or judicial economy. Defendants' demand for abstention has no substantive basis but merely represents procedural posturing to deny Plaintiff its right to litigate these issues in federal court. The court therefore finds no compelling reason to abstain in favor of a state court which would determine exactly the same issues in exactly the same context.

*Plaintiff Burlington Northern's Motion for Summary Judgment*

■ Summary judgment is properly granted under Rule 56(c) if "the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The party seeking summary judgment must first identify the basis for its motion and those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this is accomplished, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* In considering a motion for summary judgment, the court must view all evidence and draw all inferences in a light most favorable to the non-moving party. *Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1559 (9th Cir.1984).

As set forth above, the statute and regulations at issue in this case require every train operating in "mountain grade" territory in Montana to be equipped with a two-way telemetry system having the capability of initiating an emergency brake application at the rear of the train upon receipt of a radio signal from the front of the train. Trains which are equipped with a caboose occupied by one of the train crew members are exempt from the two-way telemetry system requirements.

Plaintiffs contend that the entire subject matter of Montana's two-way telemetry system law, including both the specification of the telemetry systems and the alternative of occupied cabooses, has been preempted by existing federal law, and that compliance with the requirements of Montana's law will result in noncompliance with federal regulations.

Defendants contend that the regulations promulgated pursuant to Section 69–14–116 MCA, as amended, are not preempted because the subject matter of the Montana law is not covered by federal regulations. Defendants further contend that the Montana law is necessary to ensure the safety of the state's citizens and that the measure falls within the "local safety hazard" exception of the Federal Railroad Safety Act which enables states to enact limited railroad safety regulations under narrow circumstances.

The Railroads advance two principal arguments concerning federal preemption that the court will address. First, they contend that the Federal Railroad Safety Act (FRSA), codified at 45 U.S.C. §§ 421–444, and the 1986 rule-making proceedings of the FRA preempt all state regulation of end-of-train devices and use of occupied cabooses on trains. Second, they contend that the Locomotive Boiler Inspection Act (LBIA), codified at 45 U.S.C. §§ 22–23, 28–43, preempts all state regulation which would require equipment to be added to locomotives beyond what is expressly authorized under federal law.

The FRSA was enacted "to promote safety in all areas of railroad operations and to reduce railroad-related accidents." 45 U.S.C. § 421. To achieve these objectives, the FRSA requires "that laws, rules, regulations, orders, and standards relating to

railroad safety shall be nationally uniform to the extent practicable." 45 U.S.C. § 434. The FRSA has given the Secretary of Transportation the power to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety." 45 U.S.C. § 431. This power has been delegated to the Federal Railroad Administration (FRA). 49 C.F.R. § 1.49(n).

The FRSA allows for limited state regulation of railroad safety within the parameters of the FRSA's own preemption provision which states in part:

A state may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. Plaintiffs argue that Montana's two-way telemetry law is preempted under both of the alternatives contained in § 434 of the FRSA.

Regarding the first component of § 434, which is concerned with subject matter preemption, Defendants contend that because an ongoing proceeding before the FRA (FRA Docket PB-9) concerns the nationwide utilization of two-way telemetry systems, the FRA cannot be considered to have acted on the subject matter. Therefore, Defendants argue that Montana can regulate in the field of two-way telemetry systems at least until the federal proceedings are completed. It is not disputed that the FRA is currently considering the possibility of imposing two-way telemetry system requirements on railroads nationwide. However, Defendants are incorrect in their assertion that the FRA has not adopted

rules and regulations covering the subject matter of telemetry devices.

The regulations concerning telemetry systems are very specific in describing the design and function requirements of rear-of-train and front-of-train devices. These regulations, found in 49 C.F.R. § 232.19, do not provide for a broad range of devices with varying functions and capabilities, but set forth exacting standards which clearly control and limit the functions of these devices to the monitoring of rear-train brakes and the one-way transmission of such information to the engineer in the locomotive cab. Defendants urge that a two-way system which can not only monitor but also engage rear-train brakes from the locomotive is acceptable as a more stringent safety standard. However, such a device would be a radical deviation from the standards so carefully and specifically set out in § 232.19 of the regulations. Nothing in the regulations suggests that such major differences in function and design of telemetry systems is acceptable.

Additionally, in its 1986 rule-making, the FRA directly addressed proposals for a two-way telemetry requirement such as Montana currently seeks to impose and reported:

After careful consideration, FRA has concluded that such a requirement is unwarranted. First, cabooseless trains operated currently without an end-of-train device lack any ability to initiate an emergency brake application from the rear of the train. Those operations have not demonstrated a need to be able to do so. Second, FRA notes that currently available devices generally do not incorporate this feature and that development work remains to be done before a reliable system is available. Third, this feature would require two-way signal transmission, sharply increasing the cost of the device. However, FRA intends to monitor the development and impact of end-of-train devices as time goes on.

51 Fed.Reg. 17,301 (May 9, 1986).

This express rejection of a two-way telemetry system requirement by the FAR is the clearest evidence that the subject mat-

ter of Montana's telemetry regulations has been preempted by the FRSA. In *Burlington Northern v. State of Montana,* 880 F.2d 1104 (9th Cir.1989), the Court of Appeals addressed a similar situation where the FRA had expressly rejected a requirement that trains have cabooses. The court held that the FAR's rejection of a requirement that cabooses be mandatory had the effect of precluding any state from making such a requirement. "Applying this principle, our court has stated that the FRA's rejection, like its adoption, of particular safety regulations may preempt state regulations on the same subject matter." *Id.* at 1107. The court further stated that "[i]f after due consideration the FRA determines that a particular regulation is not justified, that determination has the same preemptive effect as the adoption of a regulation." *Id. quoting Southern Pacific Transportation Co. v. Public Utilities Comm. of California,* 647 F.Supp. 1220, 1226 (N.D.Cal.1986).

▮ In the current situation, the FRA, after due consideration, has rejected a requirement for two-way telemetry systems. Therefore, since no state can require that which the FRA has expressly rejected, Montana cannot require two-way telemetry systems capable of engaging rear-train brakes.

▮ Defendants also contend, however, that they can survive the fires of preemption under the "local safety hazard" exception of § 434. As stated above, the state law must satisfy three requirements to fall under the exception. First, the regulation must address an "essentially local safety hazard." A local hazard has been defined as one that is (1) not statewide in character, and (2) not capable of being encompassed in uniform national standards. *National Ass'n of Regulatory Util. Comm'rs v. Coleman,* 542 F.2d 11 (3d Cir.1976).

The Plaintiffs argue that the local hazard addressed in the Montana law is not truly local in the sense intended under § 434. Certainly, "mountain grades" are not unique. They occur in many places of Montana and throughout the nation and are not peculiar to a particular locality.

Furthermore, the express language of Section 69–14–116, MCA, as amended, requires two-way telemetry systems or cabooses on all trains operating within mountain grade territory "as geographically defined and designated by mile posts in the railroad's official timetable and operating rules on file with the commission." The provisions go on to state in subsection (2)(c) that a train which will be operating in mountain grade territory "may not depart a crew change point or its local point of origin unless the train is equipped with the telemetry system ..." These two quoted portions of Section 69–14–116 illustrate a fundamental flaw in the statute as pertains to the local hazard exception. A local safety hazard is necessarily restricted geographically, not logistically or administratively. Nevertheless, the statute attempts to reduce or eliminate a geographically limited hazard by imposing safety requirements over an area not geographically defined, but rather arbitrarily defined by "crew change points" or "local points of origin."

Accordingly, the court finds that the "mountain grade" requirement as currently expressed in Section 69–14–116, Mont. Code Ann., as amended, is overly broad and fails to adequately define a local hazard within the meaning of § 434 of the FRSA.

The second requirement for a valid state law under the "local safety hazard" exception is that it be compatible with federal law. In this case, the telemetry system regulations already discussed in the subject matter preemption analysis must again be carefully considered. By complying with the state regulations, the railroads will be forced to utilize telemetry devices which are not authorized anywhere in the federal regulations, and which, in fact, vary greatly from the exact standards set out in 49 C.F.R. § 232.19. Furthermore, the court notes that federal regulations specifically require under § 232.19(b)(3) that telemetry systems be designed so that accidental engagement of rear-train brakes is impossible. The court finds that an express federal requirement that rear-of-train devices be incapable of engaging rear-train brakes cannot be reconciled with a state regulation

which requires rear-of-train devices specifically designed for just such a capability. Therefore, Montana's two-way telemetry system law also fails to pass muster under the second requirement of the "local safety hazard" exception.

Finally, the "local hazard" exception is not applicable if the state law places an undue burden on interstate commerce. The adoption and enforcement of these regulations could certainly lead to trains being stopped or delayed for noncompliance with Montana law. However, having found no "local hazard" here, the court need not at this time engage in an analysis weighing the state interests involved against the magnitude of the alleged burdens.

Turning then to the Locomotive Boiler Inspection Act (LBIA), the court notes that it authorizes the Secretary of Transportation to prescribe and regulate "all parts and appurtenances" of locomotives and has been held to totally occupy the field of locomotive equipment regulation. *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1152 (9th Cir.1983). The phrase "all parts and appurtenances" has been interpreted by the Ninth Circuit Court of Appeals to encompass any part or attachment of a locomotive that "is 'within the scope of authority delegated to the [Secretary]' to prescribe the same part or attachment." *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1152 (9th Cir.1983) quoting *Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926).

■ Defendants' attempt to create a factual dispute by contending that the two-way telemetry devices do not constitute a "locomotive part or appurtenance" under the LBIA. Defendants argue that the LBIA is inapplicable because the actual braking device is located at the rear of the train and not on the locomotive. This contention is facetious at best. Defendants are reminded that the regulations they have promulgated call for a *two-way* telemetry system. This requires a radio telemetry device located in the cab of the locomotive capable of sending radio transmissions to the rear of the train. This is a far different device from one capable of merely reading signals from the rear of the train for monitoring purposes. Therefore, Defendants' attempt to create a factual dispute is unavailing.

Telemetry devices are unquestionably within the Secretary's power to regulate. Title 49 C.F.R. § 232.19 clearly controls the design, function and use of front-of-train (locomotive based) telemetry devices. Following the definition expressed in *Marshall*, then, such devices are necessarily included in the phrase "all parts and appurtenances" of locomotives and would be under the regulatory canopy of the LBIA. Therefore, any state regulation of such devices is absolutely preempted.

Based upon the foregoing analysis, the court finds that Section 69–14–116, Montana Code Annotated, as amended, and the rules and regulations implementing it as adopted by the Montana Public Service commission are preempted by the Federal Railroad Safety act of 1970 and the Locomotive Boiler Inspection Act. The court further having found that no genuine issues of material fact exist, and that Plaintiff Burlington Northern is entitled to judgment as a matter of law,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED, and Plaintiff Burlington Northern's motion for summary judgment is GRANTED.

IT IS HEREBY ORDERED AND DECLARED that Section 69–14–116, Montana Code Annotated, as amended by Chapter 487, Session Laws of Montana, 1991, (House Bill 271), and its implementing regulations are unconstitutional, void, and unenforceable.

IT IS FURTHER ORDERED that Defendants and all persons acting in concert with them are hereby permanently enjoined from enforcing or attempting to enforce the provisions of Section 69–14–116, Montana Code Annotated, as amended by Chapter 487, Session Laws of Montana, 1991, (House Bill 271) and its implementing regulations.

Let Judgment enter accordingly.

The clerk is directed forthwith to notify counsel of entry of this order.