Tyler Z. **MILESCO**, Plaintiff,

v.

**NORFOLK SOUTHERN CORPORATION**, Norfolk Southern Railway Company; and ACF Industries, LLC, Defendants/Third–Party Plaintiffs,

v.

**Joy Technologies, Inc., f/k/a Joy Mining Machinery; and Amsted Rail Company, f/k/a ASF–Keystone, Inc., Third-Party Defendants.**

**No. 1:09–cv–01233.**

United States District Court, M.D. Pennsylvania.

Sept. 6, 2011.

Richard A. Sadlock, Neil J. Rovner, Angino & Rovner, Harrisburg, PA, for Plaintiff.

Craig J. Staudenmaier, Joshua D. Bonn, Nauman, Smith, Shissler & Hall, LLP, Harrisburg, PA, John Ehmann, John C. McMeekin, II, Rawle & Henderson, LLP, Philadelphia, PA, for Defendants/Third–Party Plaintiffs.

Edward M. Koch, James J. Donohue, Thomas Justin Chapman, White and Williams, LLP, Philadelphia, PA, for Third–Party Defendants.

### *MEMORANDUM & ORDER*

JOHN E. JONES III, District Judge.

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendant/Third–Party Plaintiff ACF Industries, LLC's Motion to Dismiss Plaintiff's Claims for Lack Subject Matter Jurisdiction (Federal Preemption). (Doc. 127). For the following reasons, we shall deny the pending motion.

### I. PROCEDURAL HISTORY and FACTUAL BACKGROUND

On June 5, 2009, Plaintiff filed suit against ACF Industries, LLC, ("ACF"), Norfolk Southern Corporation, and Nor-

folk Southern Railway Company (collectively the "Norfolk Defendants") for negligence and products liability in connection with his June 29, 2007 accident stemming from an ACF 20B gas return cushion unit (the "cushion unit"). (Doc. 1 at Ex. A). On June 29, 2009, the Defendants removed the lawsuit to federal court. (Doc. 1). On July 6, 2009, ACF filed a motion to dismiss Plaintiff's complaint, (Doc. 7), which we ultimately granted in part and denied in part on January 5, 2010, 2010 WL 55331. (Doc. 20). A day earlier, on January 4, 2010, ACF filed a third-party complaint against Amsted and Joy. (Doc. 19). ACF amended that pleading on January 20, 2010. (Doc. 22). On January 28, 2010, Plaintiff filed an amended complaint against ACF and the Norfolk Defendants. (Doc. 24). On February 16, 2010, the Defendants filed a third-party complaint against Amsted and Joy. (Doc. 34).

ACF filed a motion to dismiss Plaintiff's amended complaint on February 11, 2010. (Doc. 29). Amsted filed its motion to dismiss the third-party complaints of ACF and the Norfolk Defendants on March 8, 2010, (Doc. 44), and Joy did the same on March 8, 2010 and April 19, 2010, respectively. (Docs. 46, 63). On August 18, 2010, we issued a memorandum and order denying ACF's motion to dismiss as to Plaintiff's negligence claim, and granting it in all other respects. (Doc. 76 at 47). As to the Amsted motion, we denied the motion to the extent it was related to the contribution claims of ACF and Norfolk insofar as those claims were based upon a theory of negligent training/instruction, and granted it in all other respects. (*Id.* at 47–48). Finally, regarding the Joy motions, we granted them in their entirety. (*Id.*). In that order, we also granted ACF and the Norfolk Defendants leave to amend their third-party complaints to correct technical deficiencies identified in our memorandum. (*Id.* at 48). ACF and the

Norfolk Defendants subsequently filed amended third party complaints against Amsted on September 15, 2010. (Docs. 85, 87).

Thereafter, on September 21, 2010, Liberty Mutual/Peerless Insurance Company filed a Motion to Intervene, (Doc. 88), which we granted on January 31, 2011. (Doc. 106). On October 5, 2010, Amsted filed answers to the third party complaints of ACF and the Norfolk Defendants. (Docs. 95, 96). The Norfolk Defendants and ACF filed motions for summary judgment, (Docs. 111, 112), on May 2, 2011, as well as briefs in support thereof. (Docs. 114, 116). Subsequently, ACF filed the instant motion to dismiss for lack of subject matter jurisdiction, (Doc. 127), on June 23, 2011, and a brief in support thereof. (Doc. 128). Plaintiff filed a response and brief in opposition on July 7, 2011. (Docs. 136, 137). The Norfolk Defendants also filed a response and brief in opposition on July 7, 2011. (Docs. 138, 139). On July 20, 2011, ACF filed a reply brief in further support of its motion to dismiss. (Doc. 146). Therefore, the pending motion has been fully briefed and is ripe for disposition.

## II. DISCUSSION

At the outset, we note that the doctrine of preemption is grounded in the Supremacy Clause of Article VI of the U.S. Constitution, which states that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, ... shall be the supreme Law of the Land...." U.S. Const. Art. VI, cl. 2. As the Third Circuit noted in *Kurns v. A.W. Chesterton Incorporated,* there are three types of federal preemption, express preemption, implied conflict preemption, and field preemption. 620 F.3d 392, 395 (3d Cir.2010). As its name suggests, express preemption occurs when Congress

creates a federal law with language explicitly providing for the preemption of a contrary state law. *Id.* (citing *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 541, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001)). On the other hand, implied conflict preemption exists when it is either "impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citing *English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). Finally field preemption, the type the Court is presented with here, results when a "state law or regulation intrudes upon a field reserved for federal regulation." *Id.* (citing *United States v. Locke,* 529 U.S. 89, 111, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)).

ACF, in its capacity as Defendant, moves to dismiss Plaintiff's claims on grounds that the same are state common law claims preempted by federal law. (Doc. 128 at 6). It cites the Boiler Inspection Act ("BIA" also known as the "Locomotive Inspection Act" ("LIA")), which states that "a railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances,—(1) are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. In addition, it contends that Federal Rail Safety Act ("FRSA") and the Safety Appliance Act ("SAA") are also federal statutory schemes that preempt state common law claims. (Doc. 128 at 7).

ACF argues that in this case, the BIA preempts state law on the basis of implied preemption and accordingly, the entire field is preempted. (*Id.* (citing *Bell v. Illinois Central R.R. Co.,* 236 F.Supp.2d 882, 888 (N.D.Ill.2001))). It relies on the Supreme Court's decision in *Napier v. Atlantic Coast Line Railroad Company* for the proposition that Congress' intent in enacting the BIA was to broadly regulate the "equipment of locomotives." (*Id.* at 8 (citing 272 U.S. 605, 611–13, 47 S.Ct. 207, 71 L.Ed. 432 (1926))). ACF claims that "because a damages award can act as a 'potent method of governing conduct and controlling policy,' federal statutes that occupy a field—like the BIA in the field of locomotive safety—serve to preempt both state statutory enactments and state common-law tort remedies." (*Id.* (citing *D'Amico v. Garlock Sealing Techs., L.L.C.,* 2007 WL 2702774, *6, 2007 U.S. Dist. LEXIS 67664, *15 (E.D.Pa. Sept. 12, 2007))).

ACF also cites the Ninth Circuit's decision in *Forrester v. American Dieselelectric, Incorporated* where the court stated that "the purpose of the Act is not necessarily limited to protecting railroad employees but embraces the safety of the public as well...." (*Id.* at 9 (citing 255 F.3d 1205, 1209–10 (9th Cir.2001))). It also asserts that the *D'Amico* court, in construing the *Napier* decision, found that a plaintiff's state tort claims against his employer alleging that he contracted mesothelioma were preempted because *Napier* preempted any state actions concerning "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." (*Id.* (citing *D'Amico,* 2007 WL 2702774, at *6, 2007 U.S. Dist. LEXIS 67664 at *15)).

Regarding the FRSA, ACF argues that this statute supports the BIA's preemption of state law claims by outlining a series of regulations governing railcars. (*Id.* at 10). It contends that the BIA's preemptive effect has been unaltered by the FRSA. Citing a Sixth Circuit case, Plaintiff argues that "the preemptive effect of the BIA on state regulation of locomotive equipment

was not affected or modified by the Federal Railroad Safety Act ('FRSA') which was enacted in 1970." (*Id.* (citing *Springston v. Consolidated Rail Corp.*, 130 F.3d 241, 245 (6th Cir.1997))).

As a result, ACF maintains, Plaintiff's state law claims regarding the cushion unit used on Norfolk railcars are preempted by the BIA. (Doc. 128 at 11). It also argues that in construing the BIA phrase "parts and appurtenances" the Supreme Court in *Southern Railway Company v. Lunsford* held that "whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute." (*Id.* (citing 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936))). ACF contends that to understand the meaning of the term "appurtenance" in the statute, it is necessary understand what this word meant at the time the statute was enacted, in 1911. (*Id.* at 11). Citing a version of Webster's dictionary published in 1913, it asserts that at that time "appurtenance" meant "that which belongs to something else; an adjunct; an appendage; an accessory; something annexed to another thing more worthy; in common parlance and legal acceptation, something belonging to another thing as principal, and which passes as incident to it, as a right of way, or other easement to land...." (*Id.* (citing Webster's Revised Unabridged Dictionary (1913))). ACF argues that because the purpose of a cushion unit is to absorb energy transferred between railcars when moved by a locomotive, and thereby prevent derailment, a cushion unit should be considered an appurtenance. (*Id.* at 12).

In addition, ACF cites a number of cases holding that various components affixed to locomotives were covered by the BIA. (*Id.* at 12–13 (citing *e.g. Burlington N. R.R. Co. v. Montana,* 805 F.Supp. 1522 (D.Mont.1992) (holding that a telemetry system linking radio device in locomotive cab to braking device at rear of train was "within the scope of authority delegated to the [Secretary of Transportation] to prescribe," and thus an "appurtenance"); *Seaboard Coast Line R.R. Co. v. Jackson,* 256 So.2d 568 (Ct.App.Fla.1971) (finding that a two-way radio used to provide communication between locomotive and yard employees was an "appurtenance" for BIA purposes); *Zollinger v. Pittsburgh & Lake Erie R.R. Co.,* 337 F.Supp. 913 (W.D.Penn. 1972) (concluding that a push-pole stored on board the engine and used to move other standing cars was an "appurtenance" under the BIA); *Herold v. Burlington N. Inc.,* 761 F.2d 1241 (8th Cir.1985) (finding that an amber rotating beacon typically attached to the locomotive was an "appurtenance" even while in the shop being repaired))). ACF maintains that the BIA was enacted to provide a uniform body of regulation for the railroad industry, and as a result, cushion units on railcars fall within its scope. As evidence of the BIA's national regulatory scheme, it highlights *Bell v. Illinois Central Railroad Company* where the Northern District of Illinois stated that:

> if each state were to employ different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or else adhere to the standard set by the most stringent states. Either way, Congress's goal of uniform, federal railroad regulation would be undermined.

(*Id.* at 14 (citing 236 F.Supp.2d 882 (N.D.Ill.2001))).

ACF further emphasizes the Second Circuit's decision in *Oglesby v. Delaware & Hudson Railway Company* where the court held that "the source of the damages, whether statutory or common law, is irrel-

evant, and both must therefore be preempted by the BIA." (*Id.* at 16 (citing 180 F.3d 458, 460 (2d Cir.1999))). Furthermore, it contends that since the BIA occupies the entire field of railroad safety, tort claims filed within this field are preempted unless Congress indicates an intent to exclude them from the preclusive affects of the act. (*Id.* at 16).

ACF also argues that Plaintiff's claims are preempted by the FRSA and the SAA. (*Id.* at 16–18). It maintains that the FRSA's preemptive scope extends not only to FELA claims instituted by railroad employees, but also to state-law negligence claims of non-railroad employees. (*Id.* (citing *Nickels v. Grand Trunk Western R., Inc.,* 560 F.3d 426, 430 (6th Cir.2009))). As to the SAA, ACF notes that it regulates "rail cars, locomotives, tenders or similar vehicles." (*Id.* at 18 (citing 49 U.S.C. § 20301(a))). It argues that "the category of safety appliances created by [the SAA] ... should be broadly read to include every device falling within that category, even if the Secretary of Transportation has not seen fit to standardize a particular type ... of that device." (*Id.* at 19–20 (citing *Carrillo v. ACF Indus., Inc.,* 20 Cal.4th 1158, 86 Cal.Rptr.2d 832, 980 P.2d 386, 389–90 (1999))).

Additionally, ACF contends that allowing a plaintiff to recover damages for a common law cause of action can have the same regulatory effect as a legislative enactment, and thus is preempted by federal law. (*Id.* at 20 (citing *Cellucci v. Gen. Motors Corp.,* 450 Pa.Super. 438, 676 A.2d 253 (1996))). It argues that although the Federal Rail Administration ("FRA") did not issue specific regulations addressing every piece of safety equipment, it could have, because Congress preempted the entire field through promulgation of the SAA. (*Id.* (citing *Carrillo,* 86 Cal.Rptr.2d 832, 980 P.2d at 389–90 (finding that hop-

per-car guardrails were subject to SAA preemption even though regulations did not specify them for hopper cars, because other regulations require them on tank cars); *Shields v. Atlantic Coast Line R. Co.,* 350 U.S. 318, 320–322, 76 S.Ct. 386, 100 L.Ed. 364 (1956) (concluding that the failure of an ICC regulation concerning perimeter running boards to specify "dome running boards" was immaterial as the equipment serves the same safety function as items specified in the regulation and thus were covered by SAA preemption))).

On the other hand, Plaintiff and the Norfolk Defendants contend that Plaintiff's claims are not preempted by federal statutes because the statutes cited by ACF do not apply to the cushion unit which was responsible for Plaintiff's injuries. (Doc. 137 at 3; Doc. 139 at 5). Both parties oppose ACF's preemption argument as to each of the three federal statutes noted above.

As to the BIA, Plaintiff argues that the statute requires a locomotive or tender to be in use for the act to apply. (Doc. 137 at 4 (citing *Haworth v. Burlington Northern & Santa Fe Railway Co.,* 281 F.Supp.2d 1207, 1211 (E.D.Wash.2003))). Based on the *Haworth* decision, Plaintiff contends that a court should consider the totality of the circumstances existing at the time of the injury, including whether the locomotive or tender was "in use," where the train was located at the time of the accident, and the conduct of the injured party at the time of the injury. (*Id.* (citing *Haworth,* 281 F.Supp.2d at 1211)). Here, Plaintiff claims that no locomotive was involved, but rather a part was removed in February, 2006 and sent hundreds of miles away where it was eventually retrieved on June 29, 2007 to be scrapped. (*Id.* (citing *Southern Railway Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936) (noting that "[w]hatever in fact is an

integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute."); *Wright v. Arkansas and Missouri R.R. Co.*, 574 F.3d 612, 620 (8th Cir.2009) (highlighting that the Fourth Circuit in *Deans v. CSX Transportation Incorporated*, 152 F.3d 326, 330 (4th Cir.1998), found that a locomotive was "in use" when the train "already had its engine coupled to it and was standing on a track in the rail yard in preparation for imminent departure—not in storage or waiting to be moved into a repair location.")))). Moreover, Plaintiff argues, the normal use for a 20B cushion unit is not to be disassembled for scrap. (*Id.* at 5).

In addition, Plaintiff claims that for the BIA to apply the locomotive must have been actively used in interstate commerce at the time of the injury in order for his claim to be precluded. (*Id.* (citing *Napier*, 272 U.S. 605, 606, 47 S.Ct. 207 (1926))). Thus, he maintains, the locomotive was not in active use at the time of his injury because the cushion unit had been removed sixteen (16) months earlier and had been shipped several hundred miles from the place where it was last in active use. (*Id.*).

Regarding the SAA, Plaintiff likewise argues that for this to apply, the locomotive must be in use in interstate commerce. (*Id.* at 6 (citing 49 U.S.C. § 20302(a))). Additionally, he highlights section 20302(a) of the SAA which does not list a cushion unit as one of the enumerated pieces of equipment regulated by the statute. Plaintiff maintains that the statute requires that these specific parts be "used on any of its railroad lines." (*Id.* (citing 49 U.S.C. § 20302(a))).

Plaintiff also claims that like the SAA, the FRSA does not apply because there are no rules or regulations applicable to scrapping discarded locomotive parts. (*Id.* at 8). He contends that in order for the FRSA to preempt a state law, it must substantially subsume the relevant state law. (*Id.* (citing *Bradford v. Union Pacific Railroad Co.*, 491 F.Supp.2d 831, 835 (W.D.Ark.2007))). Here, he argues, the FRSA does not address the scrapping of locomotives parts. (*Id.*). Moreover, the SAA permits negligence actions if the Secretary of Transportation fails to regulate a particular area of railroad safety or security. (*Id.* (citing 49 U.S.C. 20106(a)(2))). Finally, Plaintiff argues that permitting his claims to proceed would pose no threat to Congress' purpose in enacting the BIA, the SAA, or the FRSA.

Similarly, the Norfolk Defendants contend that none of the federal statutes above preempt Plaintiff's claims. Concerning the BIA, the Norfolk Defendants claim that this statute applies specifically to locomotives. (Doc. 139 at 5 (citing 49 U.S.C. § 20701)). They challenge ACF's reliance on *Burlington Northern Railroad Company v. Montana* because in that case the court found that the radio telemetry device located in the cab of the locomotive was a part or appurtenance because a two-way telemetry system had been required by the FRA. (*Id.* at 6 (citing 805 F.Supp. 1522, 1528–29 (D.Mont.1992))). As to the FRSA, the Norfolk Defendants argue that ACF fails to cite any case law demonstrating that the statute applies to cushion units. Concerning the SAA, they claim that while this statute regulates locomotives, it more often governs railcars. (*Id.* at 9 (citing 49 U.S.C. § 20301(a))).

Finally, the Norfolk Defendants challenge ACF's contention that the BIA and SAA apply equally to railroad employees and non-railroad employers. They claim that ACF's reliance upon *D'Amico v. Garlock Sealing Technologies* is misplaced because although the court therein granted

summary judgment for defendants, it did so because plaintiff failed to provide evidence that the decedent inhaled asbestos from a specific defendant's product, and not because the estate's negligence claim was preempted by the BIA. (*Id.* at 12 (citing *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988))). They also distinguish *Forrester v. American Dieselelectric, Incorporated* because the Ninth Circuit found the plaintiff's claim to be preempted after the defendant provided evidence that the locomotive crane that caused the plaintiff's injuries was specifically governed by the BIA. (*Id.* at 12–13 (citing *Forrester*, 255 F.3d at 1207–08)).

As the Third Circuit stated in *Kurns*, the BIA provides that "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—(1) are in proper condition and safe to operate without unnecessary danger of personal injury...." *Id.* at 396 (citing 49 U.S.C. § 20701). Furthermore, the Supreme Court in *Napier* held that the ICC's [1] power to regulate under the BIA "extends to the design, the construction and the material of every part of a locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 611, 47 S.Ct. 207. Thereafter, the Supreme Court elaborated upon its construction of "parts and appurtenance" by holding that "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute." *S. Railway Co. v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936). In describing the preemptive scope of the BIA, the

*Kurns* court noted that "the power delegated to the [Interstate Commerce] Commission by the Boiler Inspection Act as amended is a general one. It extends to the design, the construction of every part of the locomotive and tender and of all appurtenances." 620 F.3d at 396 (citing *Napier*, 272 U.S. at 611, 47 S.Ct. 207). The court also stated that the LIA "preempts a broad field relating to the health and safety of railroad workers, including requirements governing the design and construction of locomotives, as well as equipment selection and installation." *Id.* at 397.

Having outlined the respective positions of the parties, as well as the relevant case law and statutes, the salient question for the Court to decide is whether the BIA's wide preemptive scope covers Plaintiff's common law negligence claims herein. At the outset, the Court notes that while we agree with ACF's argument that the BIA supplants most state law claims, it is far from clear that Congress intended to preempt negligence claims stemming from injuries attributable to parts or appurtenances removed from a railcar for purposes of scrapping and otherwise decommissioning that particular part. Although we find that the cushion unit was at one time a part or appurtenance, and that the BIA would clearly preempt state law claims challenging the design and construction of the railcar to which the unit was attached, as well as the selection and installation of the cushion unit, we find that Plaintiff's negligence claims do not stem from the design or construction of railcars, or the selection and installation of cushion units. *See Kurns*, 620 F.3d at 397. In *Kurns*, the plaintiff argued that the

---

**1.** The *Kurns* court also noted that although power to regulate the construction and material of locomotives and appurtenances was initially vested in the Interstate Commerce Commission ("ICC"), this power was subsequently shifted to the Department of Transportation. 620 F.3d at 396, n. 4.

deceased suffered from asbestos exposure during the installation of brake pads and engine valves, which the court found to be preempted by the LIA. *Id.* Moreover, the Third Circuit found that the plaintiffs' products liability claims against the manufacturers of the locomotive parts were preempted by the broad scope of the LIA to "govern both the design and the construction of a locomotive's parts." *Id.* at 398. Thus, as Plaintiff's only remaining claims are grounded in common law negligence, instead of products liability, and because we find that the claims do not implicate the design, materials, construction, or installation of a cushion unit, we fail to agree that the Third Circuit's finding in *Kurns* preempts Plaintiff's claims herein.[2]

In addition, the Norfolk Defendants appropriately distinguish the cases relied upon by ACF. They contend that in *Burlington Northern Railroad Company v. Montana,* a Montana district court found that the LIA preempted claims concerning a telemetry device, which it concluded was a part or appurtenance, but did so because the device was located in the cab of the locomotive. (*See* Doc. 139 at 6 (citing 805 F.Supp. 1522, 1529 (D.Mont.1992))). The Norfolk Defendants also note that in *Zollinger v. Pittsburgh & Lake Erie Railroad Company,* the Western District of Pennsylvania found that a "push pull" was an appurtenance because "all engines and cars have brackets into which the push-pole is seated, the engine has a storage space for the pole, and although not all locomotives have poles on them, the pole was stored on the engine in the instant case." 337 F.Supp. 913, 914 (W.D.Pa.1972). We find both of these cases distinguishable from the instant case because the appurtenances in these cases were both located on the locomotive at the time of the accident.

Finally, as to ACF's reliance on *Herold v. Burlington Northern Incorporated,* we find a distinction between the Eighth Circuit's decision and the instant case. In

2. We recognize the Third Circuit's notation in *Kurns* that *"liability* under the LIA only exists if the locomotive was in use at the time of the accident." *Id.* at 397 (citing *Crockett v. Long Island R.R.,* 65 F.3d 274, 277 (2d Cir.1995)). However, the court also stated that the question of whether "the locomotive parts and appurtenances that allegedly contained asbestos . . . were not connected to a locomotive which was in transit at the time of exposure prevents the plaintiffs from bringing an action under the LIA" has no impact on the scope of preemption. *Id.* at 397, n. 5. Thus, despite the court's holding that whether parts and appurtenances were connected to the locomotive had an affect upon a liability analysis, but not a preemption analysis, we find it significant that the claims in *Kurns* arose from activities of the rail industry clearly preempted by the BIA, namely, the material of brake pads and engine valves and their installation.

In contrast, Plaintiff here alleges negligence in connection with the failure to vent a cushion unit prior to disposal, or to communicate the same to Plaintiff. (*See* Doc. 24 ¶¶ 24–25). Notably, this cushion unit had been detached and placed in transit to be scrapped. From the point of its removal to the incident involving Plaintiff almost a year and a half later, there is no evidence that the cushion unit at issue was destined to be reinstalled. Therefore, it is not immediately apparent to the Court that when Congress enacted the BIA it intended for disposal of locomotive or railcar parts to be included within "the design and construction of locomotives, [or] equipment selection and installation." *See Kurns,* 620 F.3d at 397. Indeed, we believe it imprudent to extend the BIA to cases such as the one *sub judice,* where we are presented with both attenuation as well as a part whose useful life had expired and was never intended to be reattached to a railcar. Moreover, to enlarge coverage of the BIA to parts such as the one here begs the question as to how far removed a rail part could be from active use in the industry and still trigger BIA preemption. We have little doubt that such an extreme extrapolation in the instant case would constitute a significant deviation from Congress' intent in drafting the BIA.

*Herold,* the court found that a rotating beacon removed from the locomotive for repairs was an appurtenance because the beacon had been adopted by the railroad as an effective safety device. 761 F.2d 1241, 1247 (8th Cir.1985). Here, in contrast to a cushion unit in active use, or one being repaired in order to return to active use, it is difficult to discern why a discarded unit whose only purpose is to sit idly by and await its ultimate destination—the scrap yard—should be considered an appurtenance regulated by the BIA. Accordingly, we find the cases relied upon by ACF to be distinguishable from the instant case and to caution the Court from finding the cushion unit, in this stage of its useful life, to be an appurtenance. Thus, we do not find Plaintiff's claims to be preempted by the BIA.

■ Turning to the FRSA, we agree with Plaintiff that the Secretary of Transportation has not promulgated any rule or regulation specifically governing the scrapping of a discarded rail part. As § 20101 states "[t]he purpose of this chapter [49 U.S.C. §§ 20101 et seq.] is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents. 49 U.S.C. § 20101. As a result, we find that the scrapping of the cushion unit after it had been completely removed from the railcar, shipped hundreds of miles, and sat idle for sixteen (16) months does not implicate a railroad operation. For Congress to have intended the FRSA to govern an aspect of the rail industry so attenuated from an active railroad operation necessitates a specific rule or regulation governing the same. *See CSX Transp. v. Easterwood,* 507 U.S. 658, 675, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (finding that when the Secretary of Transportation adopts a specific regulation over

an area of railway safety, here train speed, the regulation will preempt a state common law action for negligence). We find that the FRSA fails to address the issue of scrapping a discarded railroad part. Consequently, we decline to conclude that the FRSA was intended to preempt Plaintiff's negligence claim in the instant case. As 49 U.S.C. § 20106(a)(2) states

> [a] State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—(A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2). Here, we find that ACF has failed to demonstrate that allowing Plaintiff's negligence claim to proceed is incompatible with a specific law, regulation, or order of the United States, or that it unreasonably burdens interstate commerce. Accordingly, we find that Plaintiff's claims are not preempted by the FRSA.

■ Finally, as to the SAA, we agree with the Norfolk Defendants and Plaintiff that the statute is primarily concerned with the regulation of specifically enumerated components required on railcars and locomotives.[3] *See* 49 U.S.C. § 20302(a).

---

**3.** For example the statute requires, among    other things, automatic couplers, secure sill

In particular, the SAA does not include a provision requiring or otherwise regulating a cushion unit. Moreover, aside from ACF's citation to a handful of state cases reiterating Congress' intent to preempt state law regulation of railroad safety appliances, and their contention that a cushion unit is clearly a "safety appliance," they nevertheless fail to explain where in the SAA the dismantling and discarding of a cushion unit is regulated. For example, although ACF claims that the purpose of the cushion unit, to absorb kinetic energy transferred through railcars, renders it a "safety appliance," it neglects to cite any case law in support of this contention. As a result, we find ACF's assertion that the SAA preempts claims pertaining to the discarding of a retired cushion unit to be without merit. Therefore, we find that Plaintiff's claims are not preempted by the SAA.

## III. CONCLUSION

For the reasons stated above, we shall deny ACF's Motion to Dismiss Plaintiff's Claims for Lack of Subject Matter Jurisdiction (Federal Preemption), (Doc. 127), as ACF has failed to prove that the cushion unit at issue in this case falls within the preemptive scope of the BIA, the FRSA, or the SAA.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant ACF Industries, LLC's Motion to Dismiss Plaintiff's Claims for Lack of Subject Matter Jurisdiction (Federal Preemption) (Doc. 127) is **DENIED.**

steps and efficient handbrakes, secure ladders and running boards, when required by the Secretary of Transportation, and if ladders are required, secure handholds or grab irons on the roof at the top of each ladder. 49 U.S.C. § 20302(a)(1)(A)-(C).